**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FIRST PREMIER CAPITAL LLC n/k/a ) <br> COMMEND CAPITAL, LLC, ) <br> ) <br>     Appellant, ) <br> ) <br> v. ) <br> ) <br> WILLIAM A. BRANDT, JR., acting solely ) <br> in his capacity as Plan Administrator ) <br> for EQUIPMENT ACQUISITION RESOURCES, ) <br> INC., ) <br> ) <br>     Appellee. ) <br> ) <br> _____ ) <br> ) <br> IN RE: ) <br> ) <br> EQUIPMENT ACQUISITION RESOURCES, INC. ) <br> ) <br>     Debtor. ) | No. 11 C 6249 <br><br> On appeal from the United States Bankruptcy Court, Northern District of Illinois <br><br><br><br><br><br> Bankruptcy Case No. 09 B 399937 |

**MEMORANDUM OPINION AND ORDER**

In 2008, Equipment Acquisition Resources, Inc. ("EAR") entered into five equipment leases with Alliance Commercial Capital, Inc. ("Alliance"). Alliance subsequently assigned all of its rights, title and interest in the leases and equipment to Republic Bank of Chicago ("Republic Bank"). In 2009, EAR and Republic Bank entered into agreements to modify each of the leases (the "Lease Modifications"). In the Lease Modifications, EAR agreed to pay approximately $4.6 million due under the leases and the parties agreed that EAR would give Republic Bank a blanket security

interest in all of EAR's assets. The parties acknowledge that, despite this agreement, the Lease Modifications each contained a typographical error which stated that EAR granted Republic Bank, as Assignee, a security interest in *Republic Bank's* own assets, rather than EAR's assets. In any event, Republic Bank filed UCC financing statements with the Illinois Secretary of State claiming it had a blanket security interest in EAR's assets.

On October 23, 2009, EAR petitioned the bankruptcy court for relief pursuant to Chapter 11 of the Bankruptcy Code.[1] William A. Brandt, Jr. ("Brandt") was appointed Plan Administrator. On December 10, 2009, EAR abandoned its assets and the abandoned equipment was subsequently sold at auction. There is currently an action pending in the Circuit Court of Cook County wherein nearly all of EAR's creditors are engaged in a process to divide the sale proceeds among them. First Premier Capital LLC ("First Premier") is one of EAR's creditors and is a party to the Cook County litigation.

On December 20, 2010, EAR filed an adversary action against VonLehman & Company, Inc. ("VonLehman") and Brian Malthouse, EAR's outside auditors, for accounting malpractice/negligence. EAR had

---

[1] EAR, an Illinois corporation operating in the semiconductor equipment sales and servicing industry, engaged in a massive fraud from 2005 to 2009. That fraud included, but was not limited to, selling semiconductor equipment at inflated prices, leasing the equipment back, misrepresenting the value of the equipment, and pledging certain pieces of equipment multiple times to various creditors to secure financing.

previously agreed to settle its claims against VonLehman and Malthouse through a settlement agreement, but the bankruptcy court denied EAR's request to approve the settlement due to the objections of First Premier and other creditors. Republic Bank had also filed a lawsuit against VonLehman based on representations made by VonLehman to Republic Bank.

On January 7, 2011, EAR filed an adversary proceeding against Republic Bank seeking the avoidance and recovery of an alleged fraudulent transfer, a declaratory judgment rejecting Republic Bank's assertion of a lien over EAR's assets and an injunction against Republic Bank's prosecution of its lawsuit against VonLehman. Brandt subsequently filed an amended complaint, and Republic Bank moved to dismiss all counts of EAR's amended adversary complaint.

On May 25, 2011, Brandt filed a motion to approve a settlement between Republic Bank and the bankruptcy estate. The Settlement Agreement provided that (1) EAR and Republic Bank will continue to prosecute their respective lawsuits against VonLehman but will cooperate with one another in the prosecution; (2) the proceeds of either of those lawsuits (the "VL Proceeds") will be divided up between EAR and Republic Bank; (3) Brandt has no objection to the allowance of Republic Bank's filed Proof of Claim, but Republic Bank waives its claim to post-petition interest and attorney's fees; and (4) the language of the Lease Modifications will be

corrected to reflect that EAR granted Republic Bank a blanket lien on EAR's assets, subject to a "Lien Carve-Out." The parties further agreed that the "Lien Carve-Out includes, but is not limited to, any and all claims which EAR and/or Brandt have against (i) the United States of America, Internal Revenue Service; (ii) Rio Properties, Inc., Harrah's Entertainment, Inc., Luxor Hotel and Casino, and Wynn Las Vegas LLC or any other casinos; (iii) governmental or other entities which received restitution payments; and (iv) FTI Consulting Inc." ROA 2-19, p. 8.

First Premier filed objections to the motion to approve the settlement. On July 12, 2011, the Bankruptcy Court granted Brandt's motion over First Premier's objections.

First Premier now appeals the bankruptcy court's decision to grant the motion to approve the settlement. The first issue I must address is the proper standard of review I must employ. Brandt and Republic Bank assert that the applicable standard of review is abuse of discretion. *In re Doctors Hospital of Hyde Park*, 474 F.3d 421, 426 (7th Cir. 2007) (a bankruptcy court's approval of a settlement is reviewed "deferentially, for abuse of discretion"). Under this type of review, factual findings are reviewed for clear error and legal conclusions are reviewed *de novo*. *Id*. Conversely, although acknowledging that this is, in fact, an appeal from the approval of a settlement, First Premier argues that a *de novo* standard is appropriate here. In a rather creative argument, First

4

Premier argues that the bankruptcy judge, in approving the settlement, effectively awarded Republic Bank an allowed secured claim. Thus, according to First Premier's logic, this appeal actually flows from the bankruptcy court's denial of First Premier's objection to Republic Bank's claim under Federal Rule of Bankruptcy Procedure 3007(a).

Despite First Premier's attempt at artful advocacy, I do not agree that this action is an appeal from the denial of a claim objection. First Premier could have filed on objection to Republic Bank's claim, but chose not to. As discussed more fully below, I reject First Premier's assertion that the bankruptcy judge "allowed a secured claim," as the record reflects that the judge did not rule on any legal issues relating to the reformation of the Lease Modifications. Instead, he properly ruled on a motion to approve a settlement. Thus, this appeal cannot be characterized as an objection to a "claim." Because this is an appeal of the bankruptcy court's approval of a settlement, the applicable standard of review is abuse of discretion. *Doctors Hospital*, 474 F.3d at 426. An abuse of discretion occurs when a court's decision "is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re Airadigm Comm., Inc.*, 616 F.3d 642, 652 (7th Cir. 2010).

The paramount question in approving a bankruptcy settlement is

whether the compromise is in the best interests of the estate. *Doctors Hospital*, 474 F.3d at 426. "The linchpin of the 'best interests of the estate' test is a comparison of the value of the settlement with the probable costs and benefits of litigating." *Id*. (citing *In re Energy Coop.*, 886 F.2d 921, 927-29 (7th Cir. 1989)). Factors that the court should consider are the litigation's probability of success, complexity, expense, inconvenience, and delay, "including the possibility that disapproving the settlement will cause wasting of assets." *Id*. (quoting *In re Am. Reserve*, 841 F.2d 159, 161 (7th Cir. 1987)). "As part of this test, the value of the settlement must be reasonably equivalent to the value of the claims surrendered. This reasonable equivalence standard is met if the settlement falls within the reasonable range of possible litigation outcomes." *Id*. In conducting such an analysis, "a precise determination of likely outcomes is not required, since 'an exact judicial determination of the values in issue would defeat the purpose of compromising the claim.'" *In re Telesphere Communications, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (quoting *In re Energy Coop.*, 886 F.2d at 927). Further, when the bankruptcy court has a thorough understanding of the case, reviewing courts should show deference. "If the decision demonstrates a command of the case, we will not engage in second-guessing; the bankruptcy court is in a better position to 'consider the equities and reasonableness of a

particular compromise.'" *Doctors Hospital*, 474 F.3d at 426 (quoting *In re Am. Reserve*, 841 F.2d at 162).

First Premier argues that the bankruptcy court "erred by purporting to refuse to rule on the question of law of whether the Modification Agreements could be reformed." Appellant's Br. at 23. First Premier acknowledges that the bankruptcy judge maintained that he was *not* conclusively ruling on the issue of whether the Lease Modifications could be reformed, but instead concluded that reformation was "possible." The bankruptcy judge stated:

> The objections raised . . . are predicated on essentially reducing Republic Bank's claim to virtually completely unsecured status. That appears to be less than likely. I do think reformation would be possible. And, in fact, that was one of the things, I think, sought from the pleadings in the case under the Illinois law cited by the bank and the administrator, which I have considered.
>
> So it's my view that there would be a likely successful resolution of that, after trial, if I were required to sit through all the evidence of what I know at this point in time because of what Mr. Darcy [on behalf of First Premier] has candidly indicated was a mistake in one paragraph of the lease amendments[.]

ROA 2-23, p. 18. The judge went on to make clear that he was not, in fact, making a legal ruling on the issue of reformation: "Since it is without prejudice to any of the contentions the parties may raise in other litigation in other fora in which the state or some other court may take a different view whether or not the amendments could be appropriately reformed. . . . I'm not making any final determination in that regard." ROA 2-23, p. 20. Despite the judge's statement, First Premier argues that the court's "granting

7

of the Settlement Motion and approval of the settlement agreement's terms – which allowed for the reformation of the Modification Agreements, thereby giving Republic [Bank] an allowed *secured* claim – clearly belie that contention." First Premier Appellant's Br. at 24.

I do not agree that the bankruptcy court erred in "purporting to refuse to rule" on the legal issue of the reformation of the Lease Modifications. To the contrary, in determining whether a settlement is in the best interest of the estate, "a precise determination of likely outcomes is not required, since 'an exact judicial determination of the values in issue would defeat the purpose of compromising the claim.'" *In re Telesphere Communications, Inc.*, 179 B.R. at 553 (quoting *In re Energy Coop.*, 886 F.2d at 927). Thus, the court was under no obligation to issue a definitive legal ruling on the reformation question. Rather, in determining the risk of an adverse outcome for the estate in the lawsuit with Republic Bank, he considered the case law cited by the parties, including case law from Illinois which supported the notion that reformation was possible in the event of a scrivener's error or mutual mistake. Against this, First Premier offered multiple cases (all of which were distinguishable in some way from the present case) which it claimed supported the notion that an inadvertent error in a security agreement prevents the security interest from attaching to the collateral. In considering whether

8

the settlement was in the best interest of the estate, and with these two competing sets of authorities in mind, the bankruptcy court concluded that reformation was at least a "possible" outcome, thus indicating that the outcome of any litigation was uncertain. Keeping in mind that the judge was not required to – and, indeed, did not – make a "precise determination" concerning the issue, I see no error in the judge's statements regarding reformation.

Nor am I convinced that the judge's conclusion that reformation was "possible" is directly foreclosed by *Martin Grinding*.[2] In *Martin Grinding*, the bank loaned the debtor funds in exchange for the debtor's grant of a security interest in the debtor's machinery, equipment, furniture, fixtures, inventory and accounts receivable. 793 F.2d at 593. The security agreement, however, inadvertently omitted inventory and accounts receivable from its description of the secured collateral. In addition to the security agreement, the debtor executed other loan documents which included inventory and accounts receivable as secured property. The Seventh Circuit held that the narrower security agreement

---

[2] In addition, the bankruptcy judge's reference to the "composite documents doctrine" is not a basis for reversal. While the cases cited by Premier Capital suggest that the doctrine – which can apply when there is no separate security agreement – is not applicable here, the bankruptcy judge's reference to that doctrine was merely an alternative basis which supported his decision to approve the settlement. In the end, the bankruptcy judge's reference to this doctrine was not critical since all of the parties *agreed* that the error in the Lease Modifications did not reflect the parties' true intentions.

9

controlled. The court noted that a subsequent creditor that is considering extending credit to a debtor needs to rely on the public documents reflecting any security interests.

While *Martin Grinding* certainly supports First Premier's argument against reformation, it is not identical to this case, and therefore certain of its characteristics make it distinguishable. In his oral ruling, the bankruptcy judge distinguished this case from *Martin Grinding* by noting that this case did not involve an omission of a class or category or collateral. *Martin Grinding* involved the omission of certain assets in a security agreement, and did not address whether a lease could be reformed. Addressing a point made in *Martin Grinding* that creditors need to be able to rely on statements made in public documents, the bankruptcy judge pointed out that the public statements filed by Republic Bank reflected the fact that Republic Bank had a blanket security interest in EAR,[3] thus reducing the potential that any creditor of EAR's would get duped. Granted, some of these differences are minor but they do support the notion that a reasonable jurist could consider *Martin Grinding* and not be 100 percent convinced that Republic Bank would lose, especially when that jurist was not

---

[3] First Premier and Republic Bank dispute whether or not Republic Bank had a blanket security interest in EAR's assets *prior to* the Lease Amendments. That dispute need not be resolved, however, as all parties agree that Republic Bank and EAR intended to grant Republic Bank a blanket security interest in the Lease Modifications, and the UCC financing statement filed by Republic Bank reflected that intention.

tasked with making a definitive legal conclusion on the issue. In light of these differences, and in light of the fact that the judge also considered Illinois law which allowed for the reformation of contracts where there was "mutual mistake," I conclude that the bankruptcy judge did not err in concluding that the outcome of the litigation was uncertain and that reformation was at least a "possible" outcome if the matter proceeded to litigation.[4]

In granting the motion approving the settlement, the bankruptcy judge considered the factors deemed important by the Seventh Circuit, including the litigation's probability of success, expense and delay, and the possibility that disapproving the settlement will cause wasting of assets. The bankruptcy judge, having presided over the case, was in an excellent position to consider the relevant factors in determining that the settlement was in the best interest of the estate. The judge was very familiar with EAR, the reasons it filed for bankruptcy and all possible litigation recoveries. The oral ruling given by the judge demonstrated his understanding of the case. In particular, the judge recognized the importance of the lien carve-out on recoveries. With the lien carve-out, the estate would be allowed

---

[4] For the first time in reply, First Premier argues that the security interest referenced in the Lease Modifications only secured the amount due under one of the leases. Because First Premier failed to properly raise this and discuss its impact in its opening brief, it is waived. *See Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004) (arguments raised for first time in reply brief are waived).

to keep any recoveries from its suits against the IRS, four casinos, and FTI for the benefit of the creditors. Further, the judge demonstrated that he understood how the sharing agreement between Brandt and Republic Bank relating to the VL Proceeds would benefit the estate. The judge made clear that it was concerned that fighting over adversary cases could deplete the estate entirely. The judge also made clear that the settlement would relieve the estate of the substantial costs which would have been incurred in litigation against Republic Bank. He also noted that any dispute with Republic Bank would undoubtedly be heated, costly and protracted. In addition, the judge considered the possible litigation outcomes and concluded that settlement was appropriate. In light of the above, I reject First Premier's assertion that there was no support in the record for the judge's decision.

While Premier Capital did not specifically address this issue, the settlement is also within the range of outcomes. The law is clear that only if a settlement "falls below the low end of possible litigation outcomes will it fail the reasonable equivalence standard." *Doctors Hospital*, 474 F.3d at 426. Under this test, the settlement is within the range of possible outcomes. In the end, the benefits to the estate were substantial. While the estate gave up its $4.6 million fraudulent transfer claim against Republic Bank, the lien carve-out has resulted in an additional $3.2 million for the estate and the estate also has a judgment

against the United States Internal Revenue Service for an additional $871,608.00. In addition, Brandt has filed approximately sixty new lawsuits which have potential recoveries in the millions of dollars. The collections from those lawsuits, pursuant to the settlement, would directly benefit the estate. In addition, the estate will share in any recoveries by Republic Bank against VonLehman. This is significant for the estate because Republic Bank's lawsuit against VonLehman was filed first and VonLehman has a "wasting insurance policy." Thus the settlement makes it much more likely that the estate will share in any recoveries from VonLehman. With respect to the reformation issue, the estate did not lose any value in agreeing to amend the Lease Modifications, as it had already abandoned its assets. Finally, while not given a value by the bankruptcy judge, the estate benefitted greatly by avoiding the time, effort and expense of protracted litigation against Republic Bank.[5]

---

[5] I am not convinced by First Premier's assertion that Brandt somehow violated his fiduciary duty by entering into the settlement with Republic Bank. I see no evidence that Brandt improperly sought to advantage Republic Bank over other creditors. While the settlement benefitted Republic Bank in some sense (although the ultimate determination of whether or not reformation is possible will likely be decided in state court), it also benefitted all the creditors by bringing in millions of dollars to the estate. In the end, Brandt's and the bankruptcy court's conclusion that settlement with Republic Bank was in the best interest of the estate was reasonable in light of the factors discussed above. Likewise, I am not convinced by First Premier's assertion that it was error for Brandt to file the settlement motion without also providing an affidavit. First Premier provides no case authority for the notion that such action is required and, in any event, Brandt was

In conclusion, the decision of the bankruptcy court to grant Brandt's motion to approve the settlement is affirmed.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: December 19, 2011

---

available to testify, if either party (including First Premier) or the court thought it necessary.